UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ASHIQUE SOOMRO,

            Plaintiff,

     -v-                                  No.  13CV0187-LTS

THE CITY OF NEW YORK et al.,

            Defendants.

--------------------------------------------------------x


### MEMORANDUM OPINION AND ORDER

        Ashique Soomro ("Plaintiff") brings this action against the City of New York and police officers Timothy Kraus and James Lamur pursuant to 42 U.S.C. § 1983, asserting false arrest, malicious prosecution, denial of a fair trial, and related state law claims.   Defendants have moved for summary judgment dismissing all claims; Plaintiff has moved for partial summary judgment on his denial of a fair trial and malicious prosecution claims.

        The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

        The Court has carefully reviewed the submissions of the parties.  For the following reasons, Defendants' motion is granted in part and denied in part, and Plaintiff's motion is denied.


### BACKGROUND

        Unless otherwise noted, the following material facts are undisputed.  As of October 10, 2011, Plaintiff was a full-time yellow taxi cab driver working in the City of New York.  (Defs. Response to Pl. Statement of Facts Pursuant to Local Rule 56.1(b) ("Defs. Counter

Stmt.") ¶ 2.)[1]  Defendant Lamur has been employed by the New York City Police Department since May 1, 2000.  (Id. ¶ 4).  Defendant Kraus has been employed by the New York City Police Department since September 29, 2000.  (Id. ¶ 7.)  Lamur and Kraus were assigned to the city-wide Traffic Task Force ("TTF") and were working for the TTF on October 10, 2011, in the vicinity of the intersection of 57th Street and Fifth Avenue in New York County.  (Id. ¶¶ 6, 8-10.)

On October 10, 2011, at or about 11:40 a.m., Plaintiff and his passenger arrived at the intersection of 57th Street and Fifth Avenue.  (Id. ¶¶ 11-12.)  As Plaintiff finished driving westbound through the intersection, Plaintiff stopped to discharge his passenger.  (Id. ¶ 14.)  Kraus was standing 50 to 60 feet further west along 57th Street between Fifth and Sixth Avenues when he first observed Plaintiff stopping his vehicle.  (Id. ¶ 15.)  Kraus waved to Plaintiff, indicating that Plaintiff should keep moving and not stop his taxi in that location.  (Id. ¶ 16.)  Plaintiff understood that Kraus wanted him to move his vehicle.  (Defs. Local R. 56.1 Statement of Undisputed Fact ("Defs. 56.1 Stmt.") ¶ 19.)

Plaintiff drove about eight feet past Kraus towards Sixth Avenue before he stopped his vehicle.  (Defs. Counter Stmt. ¶¶ 18-19.)  The passenger threw down a ten dollar bill, opened the door and suddenly exited the passenger side of the taxi.  (Defs. 56.1 Stmt. ¶ 13.)  Kraus saw the taxi stop and approached Plaintiff's vehicle from the passenger side of the vehicle just as the passenger was exiting and banged on the roof of Plaintiff's vehicle.  (Defs. Counter Stmt. ¶ 23.)  As Plaintiff then drove away, Kraus' left arm was caught inside the vehicle,[2] and

---

[1]     Citations to the parties' S.D.N.Y. Local Civil Rule 56.1 Statements incorporate by reference the evidence cited in those statements.

[2]     Although it is undisputed that a portion of Kraus' left arm, at least up to the elbow, became stuck inside Plaintiff's taxi, the accounts differ as to whether Kraus was stuck in the front passenger window or the rear passenger window.  The NYPD's

Kraus was pulled along by the taxi.  (Defs. Counter Stmt. ¶ 24.)  Kraus remained on his feet as

he was pulled along by the taxi, before he became detached or otherwise let go of the taxi, at

which time he tumbled to the road.  (Id. ¶ 38.)  Kraus was dragged about approximately 80-100

feet down the street.  (Id. ¶ 26.)

   The parties disagree as to whether Plaintiff was aware that Kraus was caught in

the taxi.  Kraus testified at his deposition that he had yelled at Plaintiff loudly through the open

window on the passenger side to "stop the car, stop the car, pull over, stop the car."  (Kraus Dep.

Tr. 84:19-25; 85:2-4; see also Lamur Dep. Tr. 72:25-73:4.)  Kraus also testified that he had "no

doubt" that the Plaintiff could hear him because Plaintiff was "looking right at [him]" through

the side view mirror.  (Kraus Dep. Tr. 85:5-15.)  Plaintiff testified that the front passenger

window was closed and that he did not hear Kraus yelling (Pl. Dep. Tr. 67:3-15, 88:13-14), and

did not check his rearview mirror or look to his right or left (id. 78:19-24, 97:11-13; Defs. 56.1

Stmt. ¶ 39.)   Plaintiff also testified that he did not have music playing in his car and was not on

his phone.  (Pl. Dep. Tr. 88:15-19.)  Plaintiff continued driving westbound on 57th Street as

Kraus tumbled to the road, and Plaintiff did not stop until he reached the red light at 57th Street

and 6th Avenue.  (Defs. Counter Stmt. ¶¶ 39, 41.)

   Lamur was stationed roughly across the street from Kraus.  (Defs. 56.1 Stmt.

¶ 84.)  Lamur's attention was drawn to Plaintiff's taxi because it stopped in the middle of the

street to discharge a passenger.  (Id. ¶ 85.)  Lamur observed Kraus approach Plaintiff and motion

for Plaintiff to keep going.  (Id. ¶ 86.)  Lamur saw Kraus pulled along by the taxi and Lamur ran

---

    Significant Incident Report, dated October 10, 2011, stated that "PO Kraus did have
his arm in rear driver side window" (Lumer Decl. Ex. 5); Kraus testified at his
deposition that he had placed his arm inside the front passenger window (Kraus
Dep. Tr. 81:11-82:25); and Plaintiff testified that the front passenger window was
completely closed and the back passenger side window was open two inches at the
time of the incident (Pl. Dep. Tr. 67:3-15.)

after the taxi.  (Defs. Counter Stmt. ¶ 42.)  Lamur caught up with Plaintiff at the intersection of 57th Street and Sixth Avenue, where Plaintiff was waiting at the red light, and arrested Plaintiff. (Id. ¶¶ 43-44.)  Plaintiff was taken into custody and brought to the local police station for processing.  (Id. ¶ 45.)

Lamur prepared the arrest paperwork, spoke with prosecutors at the New York County District Attorney's Office ("NYDA"), and signed a criminal complaint.  (Id. ¶ 46.) Lamur signed the criminal complaint on October 10, 2011, at 11:05 p.m., based on statements he claimed were made to him by Kraus.  (Id. ¶ 48.)  The criminal complaint included the statement:

> Deponent [Lamur] states that deponent is informed by Police Officer Timothy Kraus, Shield 20901 of Manhattan Traffic Task Force, that when informant told the [Plaintiff] to move his taxi, the defendant (i) drove off, (ii) half of informant's body was still in said taxi as the defendant drove off, (iii) informant was hanging out of the taxi and was unable to get out of the taxi as the defendant drove off, (iv) informant fell out of the window and rolled on the ground causing informant to [suffer pain and injuries].

(Id. ¶ 49.)  Lamur also told the NYDA that he saw Kraus' body "half hanging out of car [sic]" and that Kraus could not put his feet down because the taxi was traveling too fast.  (Id. ¶ 80.) Kraus asserts that he is not sure whether he told Lamur that "half his body was inside" the taxi. (Id. ¶ 72.)  In his deposition taken in the instant action, Kraus acknowledged that it was not true that "half his body" was caught in the taxi cab.  (Defs. Counter Stmt. ¶¶ 73-74.)  Surveillance camera videos of the incident confirm that no more than Kraus' arm was caught in the taxi and that Kraus' head was not inside the taxi.  (Lumer Decl. Ex. 7.)  Kraus met with members of the NYDA's office telephonically and in person following Plaintiff's arrest to discuss the facts and circumstances of Plaintiff's arrest.  (Defs. Counter Stmt. ¶ 75.)

The NYDA elected to prosecute Plaintiff.  (Id. ¶ 47.)  Plaintiff was charged with

assault in the second degree, pursuant to New York Penal Law §120.05(3)[3] based on a criminal complaint signed by Lamur.  (Lumer Decl. Ex. 9.)  Although Plaintiff was charged with felony assault, his case was never presented to a grand jury and Plaintiff was never indicted.  (Defs. Counter Stmt. ¶ 55.)  Plaintiff was arraigned on October 11, 2011, and because Plaintiff was unable to post bail immediately, he was kept in custody for a period of days.  (Id. ¶ 54.)  Plaintiff appeared in court on several occasions during the course of his prosecution.  (Id. ¶ 56.)  The charges against Plaintiff were dismissed on November 29, 2012, on speedy trial grounds.  (Id. ¶ 57.)

On or about March 26, 2012, while the criminal charges against Plaintiff were pending, Kraus and his wife filed a civil lawsuit for negligence and loss of consortium against Plaintiff to recover monetary damages for physical injuries Kraus had suffered as a result of being dragged by Plaintiff's taxi on October 10, 2011.  (See id. ¶ 61.)  The suit was later settled for $94,000.  (Id. ¶ 62.)  Kraus' verified civil complaint included an allegation that "[s]olely as a result of [Plaintiff's] negligence, carelessness and recklessness [Kraus] was caused to suffer sever and serious personal injuries . . . ."  (See Lumer Decl. Ex. 12 at ¶ 16.)

Defendants have moved for summary judgment as to all of Plaintiff's claims, arguing that the existence of probable cause defeats the false arrest and malicious prosecution claims, and that Defendants are entitled to qualified immunity as to the false arrest claim. Defendants also argue that the denial of fair trial claim should be dismissed because the evidence contained within the police documents at issue would have been inadmissible in a trial of the criminal charges against Plaintiff and thus could not have influenced a jury improperly.

---

[3]     "A person is guilty of assault in the second degree when: . . . (3) With intent to prevent . . . a traffic enforcement officer . . . from performing a lawful duty . . . he or she causes physical injury to such . . . traffic enforcement officer . . . [.]"  N.Y.P.L. §120.05(3).

Plaintiff has moved for summary judgment against Kraus and Lamur on his malicious prosecution and denial of fair trial claims, principally contending that the statements contained in the criminal complaint sworn out by Lamur that "half of [Kraus'] body" was inside the taxi and that Kraus was "hanging out" of the taxi were fabricated by Lamur and/or Kraus. Plaintiff argues that, without the fabrications, there was no probable cause to support the prosecution for assault, and that the fabrications would have influenced a jury. Thus, Plaintiff argues, summary judgment should be granted in his favor on the malicious prosecution and denial of fair trial claims.

## DISCUSSION

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). The Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citation omitted). Where there are cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citation omitted).

False Arrest

    The existence of probable cause constitutes a complete defense to a false arrest claim under both Section 1983 and state law.  Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999).  "Probable cause to arrest exists when authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  McGuire v. City of New York, 142 F. App'x 1, 3 (2d Cir. 2005) (internal quotation marks and citation omitted); see also Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006) (probable cause inquiry is drawn objectively from facts known to arresting officer).  Probable cause is a "fluid concept" that does not depend on "absolute certainty," but rather on "fair probability."  McGuire, 142 F. App'x at 3 (citation omitted).  Consistent with these considerations, courts have recognized that probable cause can exist "even without specific evidence of knowledge and intent that will have to be proved to secure a conviction at trial" because of "the practicable realization that an officer frequently has no reason to know at the time he observes a person engaged in proscribed conduct what is in the person's mind."  Id. (internal quotation marks and citations omitted); United States v. Gagnon, 373 F.3d 230, 236 (2d Cir. 2004) ("[t]he fact that an innocent explanation may be consistent with the facts as alleged . . . does not negate probable cause." (quoting United States v. Farna, 758 F.2d 834, 838 (2d Cir. 1985))).  See also Mozzochi v. Borden, 959 F.2d 1174, 1179-80 (2d Cir. 1992) (police officers' motivation to arrest plaintiff largely irrelevant to the question of probable cause).  A finding of probable cause can be made based on the totality of the circumstances, Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994), and once probable cause exists to arrest a defendant, "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."  Jaegly, 439 F.3d at 154.

An officer is entitled to qualified immunity with respect to a false arrest claim if he had arguable probable cause for the arrest.  Zalaski v. City of Hartford, 723 F.3d 382, 390 (2d Cir. 2013).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  Id. (Internal quotation marks and citation omitted); see also Amore v. Narravo, 624 F.3d 522, 531 (2d Cir. 2010) ("In an unlawful arrest action, an officer is . . . subject to suit only if his 'judgment was so flawed that no reasonable officer would have made a similar choice.'") (citation omitted).  Plaintiff contends that genuine issues of fact preclude summary judgment in Defendants' favor on the false arrest claim because Kraus and Lamur must have known that Plaintiff did not intend to drag Kraus, Kraus and/or Lamur lied about how much of Kraus' body was inside the vehicle, and the totality of the evidence demonstrates that the events were an accident.  (Pl. Opp. at 5.)  As explained above, however, the probable cause inquiry is an objective one that does not depend on the arresting officer's knowledge of Plaintiff's subjective state of mind.  See McGuire, 142 F. App'x at 3.  Thus, notwithstanding the questions as to whether the Defendants later lied in asserting that Kraus had been dragged with half his body in the taxi, the existence of probable cause for the arrest turns on whether the undisputed facts would warrant a person of reasonable caution in the arresting officer's position to believe that Plaintiff was committing or had committed a crime.

Title 34, Chapter 4-11(c) of the Rules of the City of New York ("RCNY"), prohibits the discharge of passengers more than a foot away from the curb, or in circumstances which obstruct the movement of traffic; a violation of the Rule is a traffic infraction.  See 34 RCNY § 4-11(c).  A traffic infraction is deemed an offense that can give rise to probable cause for arrest.  See N.Y. Veh. & Traf. Law § 155 (2015) ("For purposes of arrest without a warrant . . . a traffic infraction shall be deemed an offense."); Smart v. City of New York, No. 08 CV

2203, 2009 WL 862281, at *4 (S.D.N.Y. Apr. 1, 2009) (holding arrest lawful because officer observed plaintiff sitting in double-parked car and "it is well-established that an officer's direct observation of even a minor traffic violation is sufficient probable cause to arrest the violator." (citations omitted)).  There is no genuine dispute that Lamur and Kraus observed or had probable cause to believe that the Plaintiff had committed a traffic infraction—Plaintiff discharged his passenger more than a foot away from the curb, in an active traffic lane.  (<u>See</u> Lumer Decl. Ex. 7 (video footage of incident).)

In addition, Lamur's undisputed observations of Kraus' encounters with Plaintiff's taxi, and of Kraus being dragged by the taxi, would support a reasonable officer in the belief that the driver dragged Kraus with the intention of interfering with Kraus' lawful duties.  As Defendants note in their briefs, intention to injure is not an element of the charged Penal Law violation.  Alternatively, and at a minimum, the undisputed facts as to Lamur's observations, as corroborated by the video evidence, provide arguable probable cause, as officers of reasonable competence could disagree as to whether the probable cause test was met for the charge of assault on an officer.

Accordingly, the Defendants are entitled as a matter of law to summary judgment dismissing Plaintiff's false arrest claim on qualified immunity grounds and because the undisputed record establishes that there was probable cause for the arrest.

<u>Malicious Prosecution</u>[4]

To prevail on a Section 1983 claim for malicious prosecution, a plaintiff must establish the elements of a malicious prosecution claim under state law and show a violation of

---

[4]    Defendants do not seek dismissal of the malicious prosecution claim on qualified immunity grounds.

his rights under the Fourth Amendment. Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted). To establish a claim of malicious prosecution under New York law, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997) (citations omitted). "Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003) (quoting Colon v. City of New York, 60 N.Y.2d 78, 82 (N.Y. 1983)). Probable cause must exist as to each of the charged offenses. See D'Angelo v. Kirschner, 288 F. App'x 724, 726-27 (2d Cir. 2008). "Once probable cause to arrest has been established, claims of malicious prosecution survive only if, between the arrest and the initiation of the prosecution, 'the groundless nature of the charges [is] made apparent by the discovery of some intervening fact.'" Smith v. Tobon, 529 F. App'x 36, 38 (2d Cir. 2013) (quoting Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996)). The issue of probable cause is to be decided as a matter of law "only where there is no real dispute as to the facts or the proper inferences to be drawn from such facts . . . . Where there is conflicting evidence, from which reasonable persons might draw different inferences . . . the question [is] for the jury." See Rounseville v. Zahl, 13 F.3d 625, 630 (2d Cir. 1994) (quoting Parkin v. Cornell University, 78 N.Y.2d 523, 529 (N.Y. 1991) (internal quotation marks omitted)).

        The parties do not dispute that Plaintiff has satisfied the first and second elements of a malicious prosecution claim in that there was an initiation of a criminal proceeding against him, and that the proceeding terminated in his favor. See Murphy, 118 F.3d at 949-50 (termination on speedy trial grounds constitutes favorable outcome for malicious prosecution

purposes).  As to probable cause, Plaintiff has pointed to several facts that raises a triable issue

for the jury as to whether, at or after the time of the arrest, the officers knew they lacked

probable cause for the assault charge.  Drawing all reasonable inferences and resolving all

ambiguities in favor of Plaintiff, the record supports the inference that Kraus and/or Lamur made

false or exaggerated statements to the NYDA that "half of [Kraus'] body" was in the taxi and

that Kraus was "half hanging out of the taxi" as Plaintiff drove off, which were later contradicted

by Kraus' testimony, Kraus' allegations in his negligence suit against Plaintiff, and the video

footage of the incident.  (See Kraus Dep. Tr. 82:4-22; Lumer Decl. Ex. 7, Ex. 12 at ¶ 16.)  To the

extent Kraus and/or Lamur falsified or embellished the account of the dragging incident, a

reasonable fact finder could conclude that they did so because they knew they lacked facts

sufficient to support probable cause for an assault charge, which requires intent to interfere with

an officer's duties.  N.Y.P.L. § 120.05(3); cf. Gannon v. City of New York, 917 F. Supp. 2d 241,

245 (S.D.N.Y. 2013) (finding triable issue on probable cause where plaintiff alleged sufficient

facts to raise prospect that police officer lied about the circumstances of a search to secure the

indictment).

              On this record, the Court cannot find as a matter of law that there was probable

cause to charge Plaintiff with assault because a reasonable juror could find that "the groundless

nature of the charges" was made apparent to Defendants after Plaintiff's arrest.  Nor can the

Court find as a matter of law that probable cause was lacking for the prosecution.  Once an issue

of fact exists with regard to the possible lack of probable cause, the element of malice becomes

an issue of fact as well.  Brandon v. City of New York, 705 F. Supp. 2d 261, 274 (S.D.N.Y.

2010) (citing Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 131 (2d Cir. 1997)).  Accordingly,

Defendants' motion for summary judgment dismissing Plaintiff's claim for malicious

prosecution is denied; Plaintiff's motion for summary judgment on his malicious prosecution

claim is also denied.[5]

Denial of Right to a Fair Trial

To prevail on a denial of fair trial claim, a plaintiff must show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012) (citation omitted); see also Ricciuti, 124 F.3d at 130 ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial . . . .")  For a claim to proceed, there need not be an actual trial; rather, the claim can accrue when fabricated information is forwarded to a prosecutor and results in the deprivation of a defendant's liberty.  See Ricciuti,124 F.3d at 130.  The deprivation need not be in the form of post-trial confinement.  See id. (upholding denial of fair trial claim based on prosecution in which charges against plaintiff had been dismissed pre-trial); Jean-Laurent v. Bowman, No. 12 CV 2954, 2014 WL 4662232, at *3 n.1 (E.D.N.Y. Sept. 18, 2014) (a plaintiff "need not demonstrate that the purportedly false statements would reach a jury because he has demonstrated . . . that [a civil defendant's] alleged fabrication of evidence led to his brief pre-trial detention.")   Nor is probable cause a defense to a denial of fair trial claim.  See Morse v. Spitzer, No. 07 Civ. 4793, 2012 WL 3202963, at *5 (E.D.N.Y. Aug. 3, 2012) (citing

---

[5]         Defendants argue that, even if probable cause existed, the malicious prosecution claim should be dismissed against Kraus because he was not personally involved in Plaintiff's prosecution since only Lamur signed the criminal court complaints. (Defs. Br. at 14-15.)  However, Kraus made direct statements to the NYDA.  A police officer initiating a baseless prosecution as a "complaining witness" is liable to the victim under Section 1983.  See White v. Frank, 855 F.2d 956, 961 (2d Cir. 1988); see also Mejia v. City of New York, 119 F. Supp. 2d 232, 273 (E.D.N.Y. 2000) (citing Ricciuti, 124 F.3d at 130).

Jovanovic, 486 F. App'x at 152).

Relying principally on the Second Circuit's non-precedential summary order in Jovanovic, Defendants argue that, because the allegedly fabricated statements contained within the criminal complaint and other police documents would have been inadmissible hearsay or protected by absolute immunity in the context of a criminal trial on the assault charge, Plaintiff's claim fails because these documents could not actually have "influenced" a jury.  Defendants also argue the documents could not have caused Plaintiff's deprivation of liberty because independent probable cause existed for the arrest and prosecution.  (See Defs. Br. at 17 n.2.)

Defendants' argument misreads Jovanovic and conflates the materiality (likely to influence a jury) and causation (consequential deprivation of liberty) elements of a denial of fair trial claim.  The allegedly fabricated evidence at issue in Jovanovic was trial testimony for which the defendant had absolute immunity.  The plaintiff was therefore unable to meet the causation element of his denial of fair trial claim, as there was no actionable wrong to which his post-conviction detention could be attributed.  See Jovanovic, 486 F. App'x at 152.  Jovanovic thus does not address the materiality aspect of the denial of fair trial inquiry—whether "the information would likely influence the jury if it arrived at a jury" in a non-immunized fashion. Garnett v. Undercover Officer C0039, 13 CV 7083, 2015 WL 1539044, at *8 (S.D.N.Y. Apr. 6, 2015) (emphasis in original); see, e.g., Carr v. City of New York, No. 11 Civ. 6982, 2013 WL 1732343, at *7 (S.D.N.Y. Apr. 19, 2013) (finding alleged fabrications immaterial and unlikely to influence jury because evidence of an exchange, whether true or not, would not have affected jury's verdict regarding possession with intent to sell charge).

The Second Circuit's 1997 precedential decision in Riccuiti makes it clear that the fabrication and provision of material false evidence to a prosecutor is a violation of clearly

established constitutional rights of the accused.  124 F. 3d at 130.  That decision, which involved information that allegedly formed the basis of prosecutorial charging decisions in a case that was dismissed prior to trial, also establishes that materiality to an actual jury decision need not be established to sustain a denial of fair trial claim.  Jovanovic is thus inapposite here because the question of whether a wrongful conviction could have resulted from fabricated information that would only have reached the jury through testimony entitled to absolute immunity has no bearing on the question of whether fabricated information passed along to a prosecutor could result in a pre-trial deprivation of liberty.

The Second Circuit's recent decision in Coggins v. Buonora, 776 F.3d 108 (2d Cir. 2015) confirms the analytical distinction between causation and materiality.  There, the Court permitted a Section 1983 claim to proceed based on alleged falsification and withholding of evidence in police reports and investigative activities, despite the fact that the officer had also given allegedly perjured grand jury testimony that would be shielded by absolute immunity.  776 F.3d at 113.  In allowing the claim to proceed, the Court reasoned that the plaintiff could make out the claim of deprivation of rights based on, among other things, "Defendants' police reports, the statements of [an officer], [Plaintiff's] knowledge of the falsity of [the] police report, [Plaintiff's] statements to the district attorney, and police radio transmissions."  Id. at 113.  Because materiality and causation are two distinct elements, and a denial of fair trial claim can accrue when fabricated information is forwarded to the prosecution (with no jury trial at all), the fact that allegedly fabricated evidence would be inadmissible at trial by itself is not a bar to the claim.  See Rucks v. City of New York, 12 CV 4226, 2015 WL 1433383, at *10 (S.D.N.Y. Mar. 20, 2015); Garnett, 2015 WL 1539044, at *8-9.  But see Brown v. City of New York, No. 14 CV 5372, 2014 U.S. Dist. LEXIS 181736, at *9-10 (E.D.N.Y. Dec. 24, 2014) (inadmissible hearsay

cannot influence a jury).

There are issues of fact as to precisely how the incident occurred and the degree to which Defendants fabricated the information that was provided to the NYDA.  There are also questions as to whether the alleged fabrications were material, and whether they caused Plaintiff's deprivation of liberty, i.e., whether the prosecutor would have proceeded with the assault charge based solely on accurate information that Kraus had been dragged by his arm.[6] Because reasonable inferences could be drawn either way on the basis of the current record, neither party is entitled to summary judgment on the denial of fair trial claim.

CONCLUSION

The Defendants' motion for summary judgment is granted as to Plaintiff's federal and state law false arrest claims, and is denied in all other respects.  Plaintiff's motion for partial summary judgment is denied.  Accordingly, Plaintiff's malicious prosecution and denial of fair trial claims will proceed as against Kraus and Lamur.[7]

The final pre-trial conference in this case will be held on May 23, 2016, at 4:30 p.m.  (Docket entry no.  71.)  The parties must confer and make submissions in advance of the conference as provided in the Pre-Trial Scheduling Order.  (Docket entry no. 24.)

---

[6]     Defendants do not dispute that, in connection with the denial of fair trial claim, both Kraus and Lamur were investigating officials responsible for forwarding information to prosecutors.  (See Defs. Opp. at 13.)

[7]     Plaintiff has withdrawn his claims asserted against the City of New York pursuant to Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978).

This Memorandum Opinion and Order resolves docket entry numbers 36 and 39.

SO ORDERED.

Dated: New York, New York
       March 30, 2016

      /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge