```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
ASHIQUE SOOMRO,                         :
                                        :   13cv0187 (DLC)
                 Plaintiff,             :
                                        :   OPINION & ORDER
       -v-                              :
                                        :
THE CITY OF NEW YORK, TIMOTHY KRAUS and :
JAMES LAMUR,                            :
                                        :
                 Defendants.            :
                                        :
----------------------------------------X
```

APPEARANCES:

For the plaintiff:
Michael Lumer
Lumer & Neville
225 Broadway, Suite 2700
New York, New York 10007

For the defendants:
Lucienne Pierre
New York City Law Department
100 Church Street
New York, New York 10007

DENISE COTE, District Judge:

Defendants Timothy Kraus ("Kraus") and James Lamur ("Lamur") move for summary judgment with respect to the plaintiff's § 1983 and state law claims for malicious prosecution and denial of a fair trial. For the following reasons, the defendants' motion is granted.

**BACKGROUND**

The facts and procedural history of this litigation are set out in a March 30, 2016 Opinion of the Honorable Laura Taylor Swain, with which familiarity is assumed. Soomro v. City of New York, 174 F. Supp. 3d 806 (S.D.N.Y. 2016) ("2016 Opinion"). The following facts are undisputed unless otherwise noted.

Plaintiff Ashique Soomro ("Soomro") was a yellow taxi cab driver working in the City of New York. The defendants Lamur and Kraus are New York Police Department ("NYPD") police officers. On October 10, 2011, they were assigned to the city-wide Traffic Task Force ("TTF") and working in the vicinity of the intersection of 57th Street and Fifth Avenue in New York County.

At or about 11:40 a.m., Soomro drove west on 57th Street and arrived at the intersection of 57th Street and Fifth Avenue. He had a passenger in the backseat of his cab. As Soomro finished driving through the intersection, he stopped to discharge his passenger. Kraus was standing 50 to 60 feet further west along 57th Street, between Fifth and Sixth Avenues, and waved to Soomro, indicating that Soomro should keep moving and not stop his taxi in that location. Soomro understood that Kraus wanted him to move his vehicle.

Soomro drove about eight feet past Kraus towards Sixth Avenue before he stopped his vehicle. The passenger threw down

a ten dollar bill, opened the door and exited the passenger side
of the taxi. Soomro discharged his passenger more than a foot
away from the curb, in an active traffic lane. Kraus approached
Soomro's vehicle from the passenger side of the vehicle just as
the passenger was exiting and banged on the roof of Soomro's
vehicle. As Soomro then drove away, Kraus' left arm was caught
inside the vehicle.[1] As confirmed by two surveillance camera
videos, the taxi dragged Kraus approximately 80-100 feet down
the street. Kraus remained on his feet as he was pulled along
by the taxi, before he tumbled to the road. He was treated at
Bellevue Hospital.

The parties disagree as to whether Soomro was aware that
Kraus was caught in and being dragged by his taxi. Soomro
continued driving westbound on 57th Street after Kraus fell, and
did not stop until he reached the red light at 57th Street and
6th Avenue.

Lamur was stationed roughly across the street from Kraus.
Lamur observed Kraus approach Soomro and motion for Soomro to
keep going. As Lamur saw Kraus being pulled along by the taxi,
he ran after the taxi. Lamur caught up with Soomro at the
intersection of 57th Street and Sixth Avenue and arrested him.

---

[1] Although it is undisputed that Kraus' left arm, at least up to the elbow, was stuck inside Soomro's taxi, the accounts differ as to whether Kraus was stuck in the front or the rear passenger window.

3

Lamur prepared the arrest paperwork, spoke with prosecutors at the New York County District Attorney's Office ("DA"), and signed a criminal complaint on October 10 at 11:05 p.m. The criminal complaint charges Soomro with assault in the second degree, pursuant to New York Penal Law ("NYPL") § 120.05(3) and includes the following statement:

> Deponent [Lamur] states that deponent is informed by Police Officer Timothy Kraus, Shield 20901 of Manhattan Traffic Task Force, that when informant told the [Plaintiff] to move his taxi, the defendant (i) drove off, (ii) <u>half of informant's body</u> was still in said taxi as the defendant drove off, (iii) informant was hanging out of the taxi and was unable to get out of the taxi as the defendant drove off, (iv) informant fell out of the window and rolled on the ground causing informant to [suffer pain and injuries].

(Emphasis supplied.) Lamur also told the DA that Kraus could not put his feet down because the taxi was traveling too fast.

Kraus is not sure whether he told Lamur that "half his body was inside" the taxi, and admits that "half his body" was not caught in the cab. The videos of the incident confirm that no more than Kraus' arm was caught in the taxi and that Kraus' head was not inside the taxi.

The DA never presented the case to a grand jury and Soomro was never indicted. Soomro was arraigned on the complaint on October 11, and kept in custody for a period of days until he posted bail. Soomro appeared in court on several occasions during the course of his prosecution. The charges against

4

Soomro were dismissed on November 29, 2012, on speedy trial grounds.[2]

On January 8, 2013, Soomro filed the instant action against the City of New York, Kraus and Lamur pursuant to 42 U.S.C. § 1983, asserting false arrest, malicious prosecution, denial of a fair trial and related state law claims. Judge Swain's 2016 Opinion granted summary judgment in favor of the defendants on Soomro's federal and state false arrest claims. The 2016 Opinion held, inter alia, that Lamur's undisputed observations "support a reasonable officer in the belief that the driver dragged Kraus with the intention of interfering with Kraus' lawful duties." The Opinion permitted his claims for malicious prosecution and denial of a fair trial to proceed.[3]

The case was reassigned to this Court on October 5, and a conference was held on November 22. At the conference, the Court permitted renewed summary judgment practice to address the remaining claims. It is undisputed that NYPL § 120.05(3) does not require proof of the defendant's intent to injure the

---

[2] While the criminal charges against Soomro were pending, Kraus and his wife filed a civil lawsuit for negligence and loss of consortium against Soomro. The suit was later settled for $94,000.

[3] Soomro has withdrawn his claims asserted against the City of New York pursuant to Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978).

5

officer, but only proof of an intent to prevent an officer from performing a lawful duty.

The defendants filed a renewed motion for summary judgment on the malicious prosecution and fair trial claims on February 3, 2017. The parties principally dispute the significance to those claims of Lamur's exaggerated description to the DA of how much of Kraus's body was caught in the cab. The motion became fully submitted on April 14.

## DISCUSSION

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Smith v. Cnty. of Suffolk, 776 F.3d 114, 121 (2d Cir. 2015) (citation omitted). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. See Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015). "[W]here the evidentiary matter in support of the motion does

6

not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (citation omitted) (emphasis omitted).

Once the moving party has asserted facts showing that the non-movant's claims or affirmative defenses cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

## I. Malicious Prosecution

To prevail on a claim for malicious prosecution under both § 1983 and New York law, a plaintiff must demonstrate "(i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." Mitchell v. City of New York, 841 F.3d 72, 79 (2d Cir. 2016) (citation omitted). "[T]o be actionable under section 1983 there must be a post-arraignment seizure, the claim being grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013).

The existence of probable cause is a complete defense to a claim of malicious prosecution. Stansbury v. Wertman, 721 F.3d 84, 94-95 (2d Cir. 2013) (citation omitted). The probable cause standard in the malicious prosecution context, however, is "slightly higher" than the probable cause standard in false arrest cases. Id. at 95. Probable cause in the context of a malicious prosecution claim has been described as "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Id. (citation omitted). Once

8

probable cause to arrest has been established, claims of malicious prosecution survive only if, between the time of the arrest and the initiation of the prosecution, "the groundless nature of the charges" is made apparent by the discovery of some intervening fact. Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996) (New York law).

Soomro was charged with assault in the second degree under NYPL § 120.05(3). A person is guilty of second degree assault when, "[w]ith intent to prevent . . . a traffic enforcement officer . . . from performing a lawful duty . . . he or she causes physical injury to such . . . traffic enforcement officer . . . ." N.Y.P.L. § 120.05(3). The elements of a § 120.05(3) claim are: (1) the defendant acted with intent to prevent the officer from performing a lawful duty; and in doing so (2) the defendant caused physical injury to the officer. "Under Penal Law § 120.05(3), the only intent required to be proved is that the defendant acted with the intent to prevent a police officer from performing a lawful duty; proof of intent to cause physical injury is not required." People v. Johnson, 495 N.Y.S.2d 847 (4th Dep't 1985). See also People v. Bueno, 18 N.Y.3d 160, 169 (2011). NYPL § 10.00(9) defines "physical injury" as an "impairment of physical condition or substantial pain." N.Y.P.L § 10.00(9).

Probable cause existed to charge Soomro in a complaint, and continue proceedings against him, for a violation of NYPL § 120.05(3). For the reasons explained in the 2016 Opinion, there was probable cause to believe that Soomro acted with intent to interfere with Kraus's lawful duties. It is also undisputed that as a result of Soomro's actions, Kraus approached Soomro's cab, got his arm trapped in it, was dragged approximately 80-100 feet and injured.

Soomro argues that the evidence that Lamur "embellished" his description of the incident and falsely asserted that "half of [Kraus's] body" was still in the taxi as Soomro drove off prevents summary judgment and requires a trial. Because the defendants do not need to show that Soomro was aware that his cab was dragging Kraus along the street, no trial is necessary to resolve how much of Kraus's body was in the cab, whether Soomro realized he was dragging Kraus along the street, whether Lamur intended to exaggerate his description of the position of Kraus's body, or his motive in doing so.

Soomro argues that the defendants exaggerated how much of Kraus's body was trapped in the cab in order to persuade the DA that Soomro must have known that Kraus was trapped inside his cab and must have intended to injure him. Because the prosecution is not required to show Soomro's knowledge and

intent to injure Kraus, this exaggeration is irrelevant to a determination of probable cause.

## II. Denial of a Fair Trial

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Ricciuti v. New York City Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). Fair trial claims based on fabrication of evidence is restricted to those cases "in which an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016). In order to succeed on a fair trial claim, an arrestee "must prove by a preponderance of the evidence that the officer created false information, the officer forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision." Id. at 280. A plaintiff may bring a fair trial claim even if the plaintiff's criminal case is dismissed before trial. Ricciuti, 124 F.3d at 127, 130. The

11

existence of probable cause to arrest is not a defense to a fair trial right claim. Garnett, 838 F.3d at 277-78.

The defendants are also entitled to summary judgment on the fair trial claim.[4] Soomro's fair trial claim is premised on his assertion that the defendants exaggerated, or even lied, about the degree to which Kraus's body was inside the cab in order to show Soomro's malicious intent and thereby convince the DA to prosecute Soomro. Since the prosecution had no burden to show at trial that Soomro intended to injure Kraus, however, the exaggeration could not influence the jury's verdict.

At trial, the jury would have been advised of the elements of a § 120.05(3) violation and admonished against returning a judgment based on sympathy or prejudice. Since there is no dispute that the DA had sufficient evidence to charge and convict Soomro without any showing either that more than Kraus's arm was caught in the cab or that Soomro intended to injure Kraus, Lamur's exaggeration, or even lie, about how much of Kraus's body was in the cab was irrelevant. While Soomro contends that the exaggeration would have been "material" to a jury, he does not explain why.

---

[4] It is unnecessary to address whether a parallel state law claim exists or whether the plaintiff preserved his right to bring such a claim by filing a timely § 50-e claim.

Finally, Soomro argues that Lamur's exaggeration may have affected the prosecution's charging decision. That is not the standard of materiality and causation set out in Garnett, 838 F.3d at 279. As explained by the Second Circuit in Garnett, significant policy reasons restrict a fair trial claim to instances in which the false information "was likely to influence a jury's decision." Id. at 280.

## CONCLUSION

The defendants' February 3, 2017 motion for summary judgment is granted. The Clerk of Court is directed to enter judgment for the defendants.

Dated: New York, New York
May 10, 2017

_____
DENISE COTE
United States District Judge